UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 3:21-CV-1788-X |
| $67,000 IN U.S. CURRENCY, | § | |
| *Defendant in rem*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Claimant Willando Clark's motion to suppress [Doc. No. 38] and motion for leave to file appendix in opposition to summary judgment [Doc. No. 56], as well as the United States' motion for summary judgment [Doc. No. 32]. As an initial matter, the Court **DENIES** the motion for leave.[1] For the reasons below, the Court **DENIES** the motion to suppress and the motion for summary judgment.

## I. BACKGROUND

On February 3, 2021, the Drug Enforcement Agency ("DEA") seized $67,000 in U.S. currency ("the Defendant Property") from claimant Willando Clark at Dallas/Fort Worth International Airport ("DFW"). Before the seizure, the DEA Dallas Airport Interdiction Group received information regarding Clark's suspicious travel. Task Force Officer Michael McBride, upon receiving this information, checked Clark's criminal background, which revealed a previous arrest for weapons and

[1] Under Local Rule 79.3, motions for leave must include the proposed filing as an attachment.

narcotics offenses. In response, both Officer McBride, along with Officer Jesus Garcia, located Clark's checked bag, and K-9 "Duke," a certified narcotics detection dog, indicated the presence of a narcotic odor on Clark's checked bag. The officers then located Clark and identified themselves, and Clark agreed to speak with them. The officers reported that Clark appeared nervous because his hands and voice were shaky, and he avoided eye contact. After receiving verbal consent to search Clark's bag, the officers discovered two large, shrink-wrapped bundles of U.S. currency concealed between layers of clothing items. Five rubber-banded bundles of U.S. currency rested inside each shrink-wrapped bag, totaling $67,000. When asked why he was carrying so much money, Clark responded that he was going to buy multiple semi-trucks in San Jose, California. Clark was in possession of two cell phones, and after he denied consent to search through them, Tarrant County Judge George Gallagher signed a search warrant for the two phones. While conducting a forensic examination of Clark's cell phones, the officers found multiple photos of marijuana as well as messages between Clark and someone known as "White Wayne," indicating Clark was supplying White Wayne with multiple quantities of marijuana.

The Government brought this forfeiture action against the $67,000 in currency pursuant to multiple statutes, including 18 U.S.C. § 981(a)(1)(A), 18 U.S.C. § 981(a)(1)(C), and 21 U.S.C. § 881(a)(6). Among other things, the Government alleges that the currency is "subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it represents money furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, or money used or

intended to be used to facilitate any violation of Title 21."[2] The Government now moves for summary judgment under 21 U.S.C. § 881(a)(6).

Clark moves to suppress all evidence derived from his detention at the airport, the seizure and search of his bag, and the seizure and search of his two cell phones, contending that the officers violated his Fourth Amendment right against unreasonable searches and seizures. The Government contends that Clark gave law enforcement verbal consent to search his checked bag, and, therefore, the search does not implicate the Fourth Amendment.[3] The Government adds that even if the search implicated the Fourth Amendment, the officers had reasonable suspicion to justify the search. Furthermore, the Government argues that the search was lawful because it possessed a valid warrant to search Clark's phones.

## II. LEGAL STANDARD

The Fourth Amendment to the Constitution ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[4] Generally, warrantless searches and seizures are considered unreasonable, "subject only to a few specifically established and well-delineated exceptions."[5] The Fifth Circuit recognizes three different tiers of constitutionally permissible citizen-police contact: (1) that which has "no coercion or detention and does not implicate the [F]ourth [A]mendment," (2) "an investigatory stop," which is

---

[2] Doc. No. 16 at 3.

[3] Doc. No. 43 at 2 (referring

[4] U.S. CONST. amend. IV.

[5] *Katz v. United States*, 389 U.S. 347, 357 (1967).

"a brief seizure that must be supported by reasonable suspicion," and (3) "a full-scale arrest[,] which must be supported by probable cause."[6]

Approaching an individual and asking them questions does not violate the Fourth Amendment.[7] An investigatory stop occurs when an officer, who has a reasonable suspicion based on specific and articulable facts, infers from those facts that a person is involved in criminal activity and detains or seizes that person.[8] If an officer has the requisite reasonable suspicion, he may stop the suspect.[9] Courts examine the totality of the circumstances in deciding whether an officer had reasonable suspicion.[10] The question that courts ask in determining whether reasonable suspicion exists is "whether or not the entire set of circumstances, taken together, created a reasonable suspicion of criminal activity."[11]

District courts can grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "A dispute is genuine if the evidence is such that a

---

[6] *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (cleaned up).

[7] *See Florida v. Royer*, 460 U.S. 491, 497 (1983); *see United States v. Galbreath*, 846 F.2d 983, 989 (5th Cir. 1988); *see also United States v. Drayton*, 536 U.S. 194, 200 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.").

[8] *Terry v. Ohio*, 392 U.S. 1, 20–23 (1968); *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009).

[9] *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013).

[10] *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006).

[11] *United States v. Pack*, 612 F.3d 341, 359 (5th Cir. 2010).

[12] FED. R. CIV. PROC. 56(a).

reasonable jury could return a verdict for the nonmoving party."[13] "A fact [dispute] is material if its resolution could affect the outcome of the action."[14]

In a civil forfeiture action, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."[15] For the Government to prevail on its claim that the property is subject to forfeiture because it was "involved in the commission of a criminal offense," the Government must show that "there was a substantial connection between the property and the offense."[16]

## III. ANALYSIS

The Court will address the motion to suppress before turning to the motion for summary judgment.

### A. Motion to Suppress

First, Clark argues that he was illegally detained outside of his terminal gate and that the officers coerced his verbal consent to search his bags. The Court finds that there was no illegal detention at the gate because the encounter between Clark and the officers was consensual. Clark fails to explain why the detention was illegal, and instead he relies heavily on his declarations as evidence of illegal detention. For example, he states the following in his declaration:

> The officers then asked for my consent to search the bag. I denied consent. I told them they could not search my bag. The officers

---

[13] *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

[14] *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (cleaned up).

[15] 18 U.S.C. § 983(c)(1).

[16] 18 U.S.C. § 983(c)(3).

> responded that if I did not consent, they would seize my bag, and I would be forced to travel without any of my belongings (if I could even make my flight). Because they had my license, my ticket to travel, and now my bag, and they were telling me I couldn't leave until they searched it, I felt I had no choice but to allow them to search.[17]

Clark did not testify at the suppression hearing at all. In contrast, the Government had officers testify that they received consent.[18] The officers' declarations state that the stop lasted less than one minute, that the officers did not hold on to Clark's boarding pass or ID, that they received consent from Clark to check his bag.[19] And Officer Garcia specifically stated that "[n]one of the officers told Clark that we would seize his bag if he did not consent to the search of the bag."[20] Those same officers appeared at the suppression hearing and re-stated those same events and facts under oath. Furthermore, a request for admission to Clark asked him to "[a]dmit that on February 3, 2021, law enforcement asked Claimant Willando Clark for consent to search Clark's bag, and Clark gave verbal consent."[21] Clark's response was "Admit."[22] If Clark complains that the consent was coerced, he fails to explain in a plausible fashion how that coercion came about.

The quick timing of the conversations at the terminal, coupled with multiple instances of verbal consent, indicate that the initial encounter was consensual. The testimony and the nonconclusory evidence that Clark provided consent. The officers

---

[17] Doc. No. 39 at 13–14.

[18] Transcript of Suppression Hearing at 15, 18, 27, 48, 63, 66, 68.

[19] Doc. Nos. 47-1 at 2–7; 47-2 at 2–3.

[20] Doc. No. 47-2 at 3.

[21] Doc. No. 34-12 at 3.

[22] *Id.*

did not illegally detain Clark at the terminal or while walking with him to his bags. The Court finds the search was consensual.

However, even if the stop and search was not consensual, the Court finds that the officers had reasonable suspicion to conduct it. Clark argues that the only basis for the officers' reasonable suspicion was their knowledge of his criminal history, his one-way route of travel, and the drug dog alert.[23] Clark contends that none of these facts are sufficient for the officers to establish a reasonable suspicion that he was committing, or was about to commit, a crime. He is incorrect.

The Government correctly argues that "reasonable suspicion can vest through the collective knowledge of the officers involved in the search and seizure operation."[24] Here, the officers received information from DEA Atlanta regarding suspicious one-way travel to a known source area for narcotics and then discovered Clark's criminal history, which included weapons and narcotics. This information added to their reasonable suspicion. After revealing to the officers that he was traveling with a large sum of money—which added to their reasonable suspicion—Clark consented to have his bag searched. However, even if he did not consent, the certified narcotics dog's positive alert to the presence of narcotics was sufficient to establish not only reasonable suspicion but probable cause to search the bag.[25] After

---

[23] Doc. No. 39 at 2–4.

[24] *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013).

[25] *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003) (confirming "that an alert by a drug-detecting dog provides probable cause to search"); s*ee also United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995) (holding that a canine alert is sufficient to establish probable cause to search a vehicle for drugs).

the officers searched the bag and uncovered the large amount of wrapped and vacuum-sealed money, reasonable suspicion continued to increase. Prior training and observation informed the officers that concealing and wrapping large amounts of currency in a manner similar to the Defendant Property is common in the narcotics trade. Reasonable suspicion increased more when Clark could not provide the officers with information regarding the trucks he planned to purchase and presented a nervous demeanor to them. And again, reasonable suspicion grew when the officers discovered Clark was traveling with two cell phones. As with the Clark's consent to the search, the officers testified at the suppression hearing to the existence of all the above circumstances that, based on their training, provided them with reasonable suspicion.[26]

Clark does not combat the Government's arguments about reasonable suspicion with any compelling legal authority or factual explanation. For example, Clark argues that the dog sniff violated the Fourth Amendment, but he cites nothing to refute precedent stating that a dog sniff of checked luggage at an airport is not a search but a free-air sniff.[27] The officers established reasonable suspicion.

Second, Clark argues that the officers illegally seized his checked bag from American Airlines' staff and subsequently illegally moved it to the terminal. However, he fails to demonstrate illegal action by the Government. In his

---

[26] Transcript of Suppression Hearing at 15, 21–22, 31–32, 80.

[27] *See United States v. Place*, 462 U.S. 696, 707 (1983); *United States v. Goldstein*, 635 F.2d 356, 361 (5th Cir. 1981) ("[T]he passenger's reasonable expectation of privacy does not extend to the airspace surrounding th[eir] luggage.").

declaration, he argues that he did not give American Airlines consent "to release possession of [his] bag and give it to law enforcement."[28] However, this argument fails because American Airlines' choice to release his bag to law enforcement does not demonstrate wrongdoing by the officers. Additionally, there is no reasonable expectation of privacy in the airspace around luggage and a free air sniff by a trained narcotics dog is not a search within the meaning of the Fourth Amendment.[29] The officers did not illegally seize Clark's bag or illegally transport his bag to the terminal.

Third, Clark argues that the officers' seizure of his cell phones was unreasonable under the Fourth Amendment, and thus unconstitutional. This argument also fails. The exigent circumstances exception to the Fourth Amendment's warrant requirement permitted the officers to seize the phones. The Supreme Court has recognized the need to prevent the imminent destruction of evidence as a sufficient justification for warrantless search and seizure, and cell phone evidence can be imminently destroyed.[30] Clark, who would soon be boarding a flight to San Jose, was mobile and so too were his phones. Knowing the imminent danger that the evidence could be destroyed if Clark departed, mobile exigency required the officers to act and seize the phones. The officers did not illegally seize Clark's phones.

Lastly, Clark argues that the warrant lacked probable cause. Clark alleges that "the warrant affidavit in this case failed to establish probable cause for the

[28] Doc. No. 39 at 13.

[29] *See, e.g., Goldstein*, 635 F.2d at 361 (holding canine sniff of checked luggage at an airport is not a search under the Fourth Amendment).

[30] *Kentucky v. King*, 563 U.S. 452, 460 (2011); *United States v. Beard*, No. 3:20-cr-0567-B, 2022 WL 1321549, at *11 (N.D. Tex. May 3, 2022) (Boyle, J.).

search warrant of [his] two cell phones."[31] Though it is not entirely clear, Clark's primary concern appears to be that the Government did not include the affidavit supporting Judge Gallagher's warrant in its summary judgment evidence. Clark argues that without the affidavit being submitted as summary judgment evidence, the Judge lacked probable cause to issue the warrant. The Government, however, explains that it provided the affidavit to Clark in response to discovery requests prior to the close of discovery. Clark makes no argument to show any deficiency inherent within the affidavit. Therefore, the warrant was valid.

In conclusion, at the earliest stages of the officers' interactions with Clark, they received consent multiple times. However, even if they did not receive consent, the free-air sniffs by the trained narcotics dog, the officers' training, and the unusual circumstances—including Clark's criminal background and one-way travel to an area known for narcotics sales—provided the officers with reasonable suspicion to execute a search and seizure of Clark's bag and phones. At the suppression hearing, the officers took the stand to aver to the truth of the Government's statements and to recount the situation themselves. For all these reasons, the Court **DENIES** the motion to suppress.

### B. Motion for Summary Judgment

District courts can grant summary judgment only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to

[31] Doc. No. 39 at 10.

judgment as a matter of law."[32] A dispute "is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[33]

The Government argues that the evidence it has produced demonstrates that the Defendant Property is subject to forfeiture under 21 U.S.C. § 881(a)(6) because the Defendant Property represents (1) money furnished or intended to be furnished in exchange for a controlled substance, (2) proceeds traceable to such an exchange, or (3) money used or intended to be used to facilitate a violation of Title 21.[34] Specifically, the Government argues that Clark received the Defendant Property in exchange for controlled substances and intended to buy controlled substances with it, and that since Clark intended to perpetuate the cycle of buying and selling controlled substances with the Defendant Property, he is not an innocent owner.[35]

The Government attempts to support its argument with seven pieces of evidence: (1) "Clark was traveling to a known source area for narcotics with a large quantity of currency"; (2) Clark "gave an implausible explanation for the currency"; (3) "the currency was packaged and concealed in a manner representative of drug trafficking"; (4) "Clark lacked sufficient legitimate income"; (5) "a trained narcotics detection dog gave a positive alert to Clark's bag and the currency" after its removal from the bag; (6) "Clark has been convicted several times for possession of marijuana and other crimes"; and (7) "Clark's cell phone contained images and text

---

[32] FED. R. CIV. PROC. 56(a).

[33] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (cleaned up).

[34] Doc. No. 33 at 25.

[35] Doc. No. 33 at 7.

communications demonstrating his recent and continuing involvement in drug trafficking of marijuana."[36]

However, despite the Government's extensive arguments, Clark counters these claims with evidence that creates a genuine dispute of material fact. For example, Clark argues that he was not traveling to San Jose for illicit purposes, that he planned to purchase trucks with the money, and that he has a legitimate income.[37] Moreover, the United States admitted to the existence of disputes. Counsel for the United States, Mr. Rocha, stated at the hearing that he "wanted [the officers] to testify about some of the disputed issues based on Clark's declaration and our declarations[.]"[38] The government certainly has the more plausible argument. But plausibility isn't the standard at summary judgment. Because there are disputed facts, the Court **DENIES** the motion for summary judgment.

## IV. CONCLUSION

The Government demonstrated in its pleadings and at the hearing that it did not illegally detain Clark or illegally seize his items, and therefore, the Court **DENIES** Clark's motion to suppress. However, the Government failed to demonstrate that there is no genuine dispute of material fact, and therefore, the Court **DENIES** the Government's motion for summary judgment.

---

[36] *Id.*

[37] Doc. No. 39-1 at 14.

[38] Transcript of Suppression Hearing at 6; *see id.* at 23 (Mr. Rocha stating, "I think we have covered a number of the disputed facts[.]"); *id.* at 115 (Mr. Rocha stating, "Those were the main disputes that we got from Clark's declaration[.]"); *id.* at 116 (Mr. Rocha stating, "So even assuming some of the facts that Clark provides that are disputed, we still could have detained Clark and asked questions.")

**IT IS SO ORDERED** this 15th day of March, 2023.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE